UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILIANA AGUILAR, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>GREENSPOON MARDER, P.A.,<br><br>Defendant. | Case No.: 17-CV-876 JLS (BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 8) |

Presently before the Court is Defendant Greenspoon Marder, P.A.'s Motion to Dismiss Plaintiff's Complaint. ("MTD," ECF No. 8.) Also before the Court are Plaintiff Iliana Aguilar's Opposition to, ("Opp'n, ECF No. 9), and Defendant's Reply in Support of, ("Reply," ECF No. 10), Defendant's Motion. The Court vacated the hearing on Defendant's Motion to Dismiss and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 11.) Having considered the parties' arguments and the law, the Court **GRANTS** Defendant's Motion to Dismiss.

## BACKGROUND

Sometime in 2006, Plaintiff incurred a debt to Westgate Flamingo Bay, LLC, which, allegedly, sold, transferred, or assigned the debt to Defendant, a law firm. ("Compl.," ECF No. 1, ¶ 17.) On January 18, 2017, Defendant sent a letter to Plaintiff

attempting to collect on the debt ("the Letter"). (*Id.* ¶ 19.) The Letter stated: "The total past due amount is $14,059.16, plus any interest and late charges which have been added to your account balance." (*Id.* ¶ 20.) It went on to disclose:

> If you do not dispute the validity of the debt or any portion thereof, you can cure the default by paying $14,059.16, within thirty-five (35) days after your receipt of this notice. If after thirty (30) days after your receipt of this notice, you have not disputed the debt or any portion of the debt, and you have not paid the past due amount after thirty-five (35) days after your receipt of this notice, your indebtedness may be accelerated and foreclosure proceedings may be instituted.

(*Id.* ¶ 30.) The Letter also stated that Defendant is a law firm retained by Westgate Flamingo Bay, LLC to "invoke the power of sale provided by the Deed of Trust executed by you with regard to the above referenced unit and week at Westgate Flamingo Bay, Las Vegas."[1] ("Ex. A," ECF No. 8-2, at 2.) The Letter notified Plaintiff that she had failed to make monthly installment payments since February 10, 2009 and the total past due amount was $14,059.16. (*Id.*) The Letter disclosed to Plaintiff that she could obtain verification of the debt, but unless she disputed the validity of the debt within thirty days, the debt would be assumed valid. (*Id.*) Finally, Defendant provided a toll-free phone number to discuss the matter in more detail. (*Id.*)

Plaintiff alleges this Letter violates various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted,"

---

[1] Plaintiff did not include the letter in her Complaint. Defendant requests the Court take judicial notice of the letter because the Complaint necessarily relies on the letter and its authenticity is not in doubt. (MTD 3); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Plaintiff does not oppose the request and also relies on the Letter in her Opposition brief. (*See, e.g.*, Opp'n 13.) Therefore, the Court **GRANTS** Defendant's request and will consider the contents of the January 2017 letter. (*See* Ex. A, ECF No. 8-2.)

generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

The Court will grant leave to amend unless it determines that no modified

contention "consistent with the challenged pleading ... [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

# ANALYSIS

To state a claim for a FDCPA violation a plaintiff must demonstrate: (1) she is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o. *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2014) (citing *Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004)). Defendant argues that Plaintiff fails to meet the third and fourth elements.

## I. Debt Collection Activity vs. Enforcing Security Interest

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). A "debt collector" includes any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." § 1692a(6).

Defendant argues that the Letter did not seek the collection of a debt; instead, it attempted to foreclose a security interest. (*See* MTD 3–4.) Therefore, Defendant argues it does not meet the definition of debt collector under 15 U.S.C. § 1692a(6) and Ninth Circuit precedent.

In *Vien-Phuong Thi Ho v. ReconTrust Co.*, 858 F.3d 568, 570 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017) ("*Ho*"), the Ninth Circuit defined when a trustee of a California deed of trust qualifies as a debt collector under the FDCPA. There, the

4

17-CV-876 JLS (BGS)

plaintiff bought a house with a loan secured by a deed of trust. *Id.* After the plaintiff missed several loan payments, the defendant initiated a non-judicial foreclosure by recording a notice of default and sent the notice to the plaintiff along with warnings to pay the outstanding balance on the loan or face non-judicial foreclosure and auctioning of the property. *Id.*

The Ninth Circuit affirmed the holding of *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002), which held that "foreclosing on a trust deed is an entirely different path than collecting funds from a debtor." *Ho*, 858 F.3d at 572 (quotation marks omitted). The *Ho* court distinguished between a person attempting to enforce his or her rights through a non-judicial foreclosure and attempting to collect money. *Id.* at 571. In support of this conclusion, the court reasoned that the definition of debt collector in section 1692a(6) distinguishes between entities that collect debts owed and a narrower definition of debt collector, which "also includes" entities whose principal business purpose is "the enforcement of security interests." *See id.* at 572–73 (citing §§ 1692a(6), 1692f(6)). Thus, "an entity does not become a general 'debt collector' if its 'only role in the debt collection process is the enforcement of a security interest.'" *Id.* at 573 (citing *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006); and *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 464 (6th Cir. 2013)). In applying its holding, the court decided that a non-judicial foreclosure was the enforcement of a security interest and not the collection of a monetary debt. Therefore, the "right to 'enforce' the security interest necessarily implies the right to send the required notices; to hold otherwise would divorce the notices from their context." *Id.*

## II. Plaintiff's Arguments

The question here is whether Defendant was involved in enforcing a security interest. Plaintiff advances four arguments in support of her thesis that Defendant's Letter was not enforcing a security interest. The Court considers each in turn.

### A. *Whether* Ho *Applies to Defendant*

The Court addresses Plaintiff's first and second arguments together because both

5

17-CV-876 JLS (BGS)

arguments rely on *Vien-Phuong Thi Ho v. Recontrust Co.* First, Plaintiff argues that Defendant does not fall under the *Ho* security interest exception because Defendant did not record a notice of default, and only sought to collect the debt prior to pursuing any foreclosure efforts. (Opp'n 11 (citing Ex. A).) The *Ho* court relied on California's non-judicial foreclosure statutes that requires a trustee to send to the borrower the notice of default and notice of sale. (*Id.* (citing *Ho*, 858 F.3d at 570–73, 575).) Plaintiff emphasizes that, in *Ho*, the recorded notice of default notified the borrower that the foreclosure process had begun, explained the foreclosure timeline, appraised the borrower of her rights, and stated the borrower could contact the creditor if she wished to make payment. (*Id.* (quoting *Ho*, 858 F.3d at 573).) Plaintiff also points to elements in the Letter that she characterizes as "additional FDCPA language." (*Id.* at 12). This language includes a thirty-five day payment demand, opportunity to dispute debt, and offer to verify debt. (*See id.*) Plaintiff argues this language further supports her contention that Defendant "engage[d] in activities that constitute debt collection." (*Id.* (citing *Ho*, 858 F.3d at 573).)

Second, Plaintiff argues that *Ho*'s security interest exception applies only to trustees and Defendant is not the trustee of Plaintiff's Deed of Trust. (*Id.* at 13.) Instead, Plaintiff states that Defendant is a law firm retained by the original creditor to collect on a defaulted debt.[2] (*Id.*) Plaintiff also points out that the *Ho* court found it persuasive that the borrower could cure by paying the creditor and not the defendant. Plaintiff distinguishes this factor because she reads the Letter as requiring her to pay Defendant directly. (*Id.* ("[I]f you pay the amount shown above, an adjustment may be necessary after *we* receive your check or payment." (quoting Ex. A, at 2)).)

Defendant counters that it represents the trustee, Westgate Flamingo Bay, LLC and

---

[2] In her Complaint, Plaintiff alleges that Westgate Flamingo Bay sold, transferred, or assigned the debt to Defendant. (Compl. ¶ 17.) Yet in her Opposition, Plaintiff contends Defendant is only a law firm retained by the original creditor to collect on a defaulted debt. (Opp'n 13.) The distinction between these two positions does not impact the Court's analysis because, under the relevant Nevada statute, Nevada law applied to the trustee or a law firm representing the trustee. *See infra* section II.A.2.

6

17-CV-876 JLS (BGS)

therefore *Ho* applies. (Reply 2–3.) Defendant also argues that Plaintiff seeks to distinguish *Ho* based on California's non-judicial foreclosure statute, but the property here is in Nevada and Nevada law applies. (*Id.* at 4.)

The Court agrees with Defendant that Nevada law applies to the case at bar. Plaintiff's property is a timeshare in Las Vegas, Nevada. (*See* Ex. A, at 2.) Nevada federal district courts follow the rule in *Hulse v. Ocwen*, which *Ho* explicitly approved. *See, e.g.*, *Garcia-Pena v. MTC Fin., Inc.*, No. 17-cv-319-RCJ-WCG, 2017 WL 4532194, at *3 (D. Nev. Oct. 10, 2017); *Contreras v. Master Fin., Inc.*, No. 10-cv-477-LRH-VPC, 2010 WL 4608300, at *2 (D. Nev. Nov. 4, 2010). Thus, *Ho* is controlling to the extent that it does not rely on California non-judicial foreclosure law.

*1. Non-Judicial Foreclosure in Nevada*

Defendant argues that the Letter is a prerequisite to non-judicial foreclosure under Nevada law. (Reply 4.) Specifically, the Letter contains information required for a notice of breach and election to sell; therefore, Defendant contends it followed Nevada non-judicial foreclosure law. (*See id.*) In *Ho*, the Ninth Circuit determined that an entity that took the "statutorily required steps to conduct [a] trustee's sale" was enforcing a security interest under California non-judicial foreclosure law. 858 F.3d at 573. Thus, the Court turns to Nevada non-judicial foreclosure law to determine whether Defendant took statutorily required steps to enforce Westgate Flamingo Bay's security interest.

In Nevada, "[w]hen a grantor defaults on [a promissory] note, the deed-of-trust beneficiary can elect either judicial process for foreclosure . . . or may pursue 'non-judicial' foreclosure-by-trustee's sale procedure under Nevada Revised Statute Chapter 107." *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 254 (Nev. 2012) (citing *Nev. Land & Mortg. v. Hidden Wells*, 435 P.2d 198, 200 (Nev. 1967)). To pursue non-judicial foreclosure, "the trustee must give notice by recording a notice of default and election to sell and serving the grantor with a copy of that notice." *Id.* at 255 (citing Nev. Rev. Stat.

§ 107.080(2)(c) (2012)).³ Next, the grantor has generally thirty-five days to cure the deficiency. *Id.* (citing Nev. Rev. Stat. § 107.080(2)(a) & (b) (2012)). "After at least three months have passed from the recording of the notice of default, the trustee must give notice of the sale. *Id.* (citing Nev. Rev. Stat. § 107.080(4) (2012)). Finally, once the sale is completed, title vests with the purchaser, but the sale may be voided if the process does not substantially comply with the statutory requirements. *Id.* (citing Nev. Rev. Stat. § 107.080(5) (2012)).

Here, Defendant argues that the Letter meets the requirements of the notice of default and the election of sale—required by statute—and thus qualifies as enforcement of a security interest. (Reply 4.) Defendant states that the notice of default must specifically describe the deficiency in payment or performance and the owner has thirty-five days from the date upon which the notice is recorded and mailed to cure the deficiency. (*Id.* (citing Nev. Rev. Stat. § 107.080(3)).) Defendant argues that "[t]his is precisely the information contained in the Letter at issue in the present case." (*Id.*)

Defendant's argument here is not convincing. If the Court were to accept that the Letter was a notice of default then Defendant would have recorded a notice of default and election to sell and then mailed "a *copy* of the notice of default and election to sell" to Plaintiff. Nev. Rev. Stat. § 107.080(3) (emphasis added). Here, there are no copies of the notice of default and election to sell. The Letter imitates some of the same requirements as a notice of default and election to sell, but are not copies of documents filed with the County Recorder. Thus, Defendant cannot rely on mailing the notice of default and election of sale, as required by Nevada law, as evidence that it was enforcing a security interest and not debt collector under the FDCPA.

///

---

³ The Nevada Legislature revised the non-judicial foreclosure statute in mid-2017. *See* 2017 Nevada Stat., ch. 571, § 1.5 (S.B. 490). The revisions took effect June 12, 2017. *See id.* At the time Defendant mailed the Letter at issue in this case, Nevada law explicitly required the notarized affidavit described in section II.A.2. The Court reads the Nevada statute as it was at the time of the Letter only to determine whether Defendant is a debt collector for the purposes of the FDCPA.

## 2. *Notarized Affidavit Required to Support Notice of Default*

The Court's conclusion that Defendant's Letter is not a notice of default and election to sell does not end the inquiry. At the time Defendant sent the Letter, Nevada law required the beneficiary or trustee to submit to the County Recorder a notarized affidavit along with the notice of breach and election of sale. *See* § 107.080(2)(c) (2017). The affidavit must have included, amongst other items, a statement that the "beneficiary or its successor in interest, the servicer of the obligation or debt secured by the deed of trust or the trustee, or *an attorney representing any of those persons*," sent the obligor or the borrower a written statement. § 107.080(2)(c)(3) (emphasis added). That written statement to the borrower must have included:

> (I) The amount of payment required to make good the deficiency in performance or payment, avoid the exercise of the power of sale and reinstate the terms and conditions of the underlying obligation or debt existing before the deficiency in performance or payment, as of the date of the statement; (II) The amount in default; (III) The principal amount of the obligation or debt secured by the deed of trust; (IV) The amount of accrued interest and late charges; (V) A good faith estimate of all fees imposed in connection with the exercise of the power of sale; and (VI) Contact information for obtaining the most current amounts due and the local or toll-free telephone number described in subparagraph (4).

*Id.* Thus, Nevada law required the trustee, or an attorney representing the trustee, to contact the borrower *before* filing the notice of breach and election of sale with the County Recorder.

Here, Defendant is an attorney representing Westgate Flamingo Bay, LLC and Defendant states in its Reply brief that Westgate Flamingo Bay is the trustee of Plaintiff's Deed of Trust. (Reply 3 (citing Ex. A, at 2).) Therefore, Defendant was not only authorized but required to contact Plaintiff before it filed the notice of default and election of sale with the County Recorder.

The next question is whether Defendant's Letter actually complied with section

107.080(2)(c)(3). The Letter meets the first and second requirements by stating that total past due amount is $14,059.16 and that Plaintiff could cure the default by paying that same amount. (*See* Ex. A, at 2.) Defendant's Letter also meets the sixth element because it provided a toll-free number for obtaining the most current amounts due. (*Id.*) However, there is no statement as to the principal amount of the obligation secured by the deed of trust, no statement as to the amount of accrued interest and late charges, and no good faith estimate of all fees imposed by the power of sale. (*See id.*) Because the Letter only meets three out of six requirements, it was not in actual compliance with Nevada statute.

The Court next considers whether Defendant's Letter, if not in actual compliance, can still be considered enforcing a security interest. In *Ho*, the Ninth Circuit stated:

> Under California's non-judicial foreclosure statutes, [the defendant] could not conduct the trustee's sale until it sent the notice of default and the notice of sale. If [the defendant] can administer a trustee's sale without collecting a debt, it must be able to maintain that status when it takes the statutorily required steps to conduct the trustee's sale. The right to "enforce" the security interest necessarily implies the right to send the required notices; to hold otherwise would divorce the notices from their context.

858 F.3d at 573 (footnote omitted). The court went on to reason, "[e]nforcement of a security interest will often involve communications between the forecloser and the consumer. When these communications are limited to the foreclosure process, they do not transform foreclosure into debt collection." *Id.* at 574.

Here, under Nevada's non-judicial foreclosure statute, Defendant could not record the notice of default and election of sale until it sent notice to Plaintiff. Defendant's Letter falls within the statutorily required steps that motivated the above quoted language in *Ho*. If the Court were to find Defendant was not enforcing a security interest such a finding would contravene the reasoning in *Ho*. Defects in the Letter do not detract from Defendant's mandate to follow the Nevada statute to enforce Westgate Flamingo Bay's

security interest.

Additionally, if the Court were to find that Defendant's Letter was not attempting to enforce a security interest then such finding would undermine the purpose of Nevada's non-judicial foreclosure scheme. At the time of the Letter, Nevada required a substantial compliance standard "with regard to a lender's duty to provide a borrower with notice of a loan's default and the lender's election to foreclose." *Schleining v. Cap One, Inc.*, 326 P.3d 4, 8 (Nev. 2014) (citing Nev. Rev. Stat. § 107.080(5)). "In other words, the Legislature specifically envisioned that the purposes behind NRS 107.080's notice and timing requirements could be achieved even if these requirements were not strictly adhered to." *Id.* (citing *Leyva v. Nat'l Default Servicing Corp.*, 255 P.3d 1275, 1278 (Nev. 2011)). The Nevada legislature explicitly required substantial compliance with the non-judicial foreclosure scheme, rather than strict compliance. This consideration militates in Defendant's favor.

In sum, Defendant's attempt to comply with the non-judicial foreclosure process, even if actually defective, places Defendant in the realm of enforcing a security interest rather than collecting a debt. Nevada statute required Defendant to take certain steps to enforce Westgate Flamingo Bay's security interest. Whether or not those steps actually complied with Nevada law does not change the nature of Defendant's activity, which was enforcing a security interest.

### B. Whether Defendant Admitted It Was a Debt Collector

Plaintiff next argues that Defendant repeatedly admitted in the Letter that it is a "Debt Collector." (Opp'n 14.) Specifically, Defendant's Letter included language such as: "Pursuant to 15 U.S.C. § 1692g (the Fair Debt Collection Practice Act), the Debt Collector hereby discloses the following information" and that "the undersigned [i.e., Defendant] is the Debt Collector." (Ex. A, at 3.) Plaintiff contends the quoted language and other similar disclosures further reinforce Defendant's status as a debt collector.

Defendant responds that the language stating it was a debt collector is "boilerplate FDCPA addendum" and "immaterial." (Reply 4.) Further, Defendant argues that

inclusion of the language does not transform the issuance of notice under Nevada's non-judicial foreclosure process into debt collection. (*Id.* at 5.) Defendant also cites a federal district court opinion that encountered similar FDCPA compliant disclaimers and that court determined FDCPA disclaimers were not dispositive to the court's analysis. *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 373 (D. Conn. 2012) (collecting cases). Defendant urges a similar result here.

The Court agrees with other district courts that have encountered a similar issue. Even though Defendant is not a debt collector for the broader definition of the FDCPA, it is still subject to the provisions of 15 U.S.C. § 1692f(6), which applies to persons enforcing a security interest. If Defendant did not include FDCPA notices then it would subject itself to potential liability for failing to comply with section 1692f(6). *See Stamper v. Wilson & Assocs., P.L.L.C.*, No. 9-cv-270, 2010 WL 1408585, at *9 (E.D. Tenn. Mar. 31, 2010) (quoting *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, No. 06-3103 (RHK/AJB), 2007 WL 2695795, at *6 (D. Minn. Sept. 12, 2007)). Moreover, if a creditor, or a law firm on the creditor's behalf, included the FDCPA notices then a court might find it was holding itself out as a debt collector—just the outcome Plaintiff urges. But, if a creditor followed Plaintiff's advice and a court determined the creditor was not enforcing a security interest then the creditor would risk violating provisions of FDCPA requiring the disclosures. No matter what path it chose, Defendant's choice created potential legal risk. The Court will not penalize Defendant for attempting to minimize its liability. *See Chomilo*, 2007 WL 2695795, at *6 (arriving at same conclusion).

Additionally, the Letter contains a bankruptcy notice at the bottom of the second page that states:

> This Letter is being sent to you on behalf of Westgate Flamingo Bay, LLC to permit Westgate Flamingo Bay, LLC to pursue its in rem rights only. Westgate Flamingo Bay, LLC is not seeking the collection of any monies from you, and Westgate Flamingo Bay, LLC is not seeking to obtain an in personam judgment, deficiency judgment, or any other type of money judgment against you. Any statements regarding any amounts due under

>
> the subject note, or under the subject deed of trust securing payment of the note, are being made to establish the amount due to permit Westgate Flamingo Bay, LLC to pursue its in rem rights against the subject property.

(Ex. A, at 3 (emphasis omitted).) The FDCPA disclosures cannot be read in isolation. The bankruptcy notice states that Westgate Flamingo Bay did not seek recovery against Plaintiff personally, but instead sought to pursue its in rem rights. *See Stamper*, 2010 WL 1408585, at *9 ("In addition, [the defendant] did not seek recovery against plaintiffs personally."). The language in the bankruptcy disclosure supports a finding that Defendant was attempting to enforce a security interest. The Court finds that the FDCPA disclosures in the Letter do not transform the underlying transaction from enforcement of a security interest into a debt collection.

### C. *Whether* Mashiri *Applies*

Plaintiff urges the Court to find *Mashiri v. Esptein Grinnell & Howell*, 845 F.3d 984 (9th Cir. 2017), controlling. There, the plaintiff was a member of a homeowners' association ("HOA") and a law firm, on behalf of the HOA, sought to collect the plaintiff's overdue assessment fee. *Id.* at 986. The notice sent to the plaintiff "included a warning that failure to pay the assessment fee would result in the HOA recording a lien against [the plaintiff's] property." *Id.* The notice went on to state that it was "required by section 5660 of the Davis-Stirling Common Interest Development Act, Cal. Civ. Code § 4000 *et seq.*, which governs the collection of overdue homeowners' association assessments." *Id.*

The defendant law firm argued that it was not a debt collector for purposes of the broader definition of 15 U.S.C. § 1692a(6) and instead was only enforcing a security interest and subject to § 1692f(6). *Id.* at 989. The *Mashiri* court determined that the defendant was a debt collector and not enforcing a security interest because:

> There was . . .no existing security interest for [the defendant] to enforce at the time it sent the May Notice because a lien had yet to be recorded against [the plaintiff's] property. Rather than seeking to enforce an existing security interest or lien, the May

> Notice sought to collect [the plaintiff's] overdue assessment fee and to make necessary disclosures that would perfect the HOA's security interest and permit it to record a lien at a later date.

*Id.* (citation omitted).

Here, Plaintiff argues that Defendant, like the *Mashiri* defendant, did not send a recorded notice of default to Plaintiff. (Opp'n 16.) Plaintiff acknowledges that California law would require Defendant to contact the borrower to satisfy the due diligence requirements of California Civil Code § 2923.5.[4] (*Id.*) However, Plaintiff argues "'perfect[ing] [a] security interest' constitutes collection efforts, and no 'security interests' exists until Defendant records a notice of default." (*Id.* (citing *Mashiri*, 845 F.3d 989–90).)

Defendant argues that *Mashiri* does not control because there was no existing security interest in *Mashiri*. (Reply 5 (citing *Mashiri*, 845 F.3d at 989).) But, in *Ho* the trustee sought to enforce a secured loan. (*Id.* (citing *Mashiri*, 845 F.3d at 990).) Defendant distinguishes the facts here because Westgate Flamingo Bay already had a recorded lien—the Deed of Trust—whereas the *Mashiri* defendant did not have any security interest and needed to send notice to perfect its security interest.

The Court agrees with Defendant that *Mashiri* is distinguishable because, there, the HOA had not recorded a security interest or lien prior to sending the notice. The association was taking the steps necessary, under California homeowners' association law, to perfect the security interest. Here, Westgate Flamingo Bay had an existing security interest at the time the Letter was sent to Plaintiff. Defendant communicated on behalf of the holder of the Deed of Trust, Westgate Flamingo Bay.

Moreover, the *Mashiri* court predicated its analysis on the notification

---

[4] California Civil Code section 2923.5 requires a mortgage servicer or authorized agent to contact a borrower before recording a notice of default. This provision in some respects is similar to the Nevada statute previously discussed, *see supra* section II.A.2. The Court acknowledges that Nevada law applies to this case; however, both *Mashiri* and *Ho* dealt with California law and those cases are distinguishable by California law.

requirements of the Davis-Stirling Act, which applies to homeowners' associations like the HOA in *Mashiri*. *See* 845 F.3d at 989 (citing Cal. Civ. Code § 5660). The *Mashiri* court did not rely on the California non-judicial foreclosure statutes in reaching its decision. In contrast, the *Ho* court relied on the non-judicial foreclosure process outlined in California Civil Code § 2924(a)(1) to determine when an entity was enforcing a security interest. 858 F.3d at 570–71. *Mashiri* did not rely on California's non-judicial foreclosure statutes.

This case fits squarely under *Ho*, not *Mashiri*. The critical distinction between those cases was the underlying statutory scheme: homeowners' association vs. non-judicial foreclosure as well as whether a security interest existed prior to sending notice. Here, Defendant attempted to enforce an already existing security interest and did so through the non-judicial foreclosure process. Indeed, Plaintiff identifies California Civil Code § 2923.5, which is part of the California non-judicial foreclosure scheme and includes similar notice provisions as its Nevada cousin, Nev. Rev. Stat. § 107.080. Both statutes require contacting the borrower *before* recording notice of default. The question here is not whether or not the security interest exists—Plaintiff does not dispute the existence of Westgate Flamingo Bay's Deed of Trust. The question is whether Defendant attempted to comply with the Nevada non-judicial foreclosure statute. The Court answers this question in the affirmative.

In sum, the Court finds that Defendant's Letter was attempting to enforce a security interest. Therefore, Defendant is not a debt collector under the broader definition of the FDCPA, *see* 15 U.S.C. §1692a(6). Accordingly, Plaintiff's FDCPA claim fails. Because the Court finds Defendant is not a debt collector, it does not reach the argument whether Defendant's conduct violated the FDCPA.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss, (ECF No. 8), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint, (ECF No. 1). Plaintiff **MAY FILE** an amended complaint that addresses the deficiencies in

this Order within twenty-one (21) days of the date on which this Order is electronically docketed. *Failure to file an amended complaint by this date may result in dismissal of this action with prejudice.*

**IT IS SO ORDERED.**

Dated: March 9, 2018

*[signature]*
Hon. Janis L. Sammartino
United States District Judge